UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-1887(DSD/SER)

Koffi Toss, formerly known
as Koffi Samaro and
Shannon Fouther,

                    Plaintiffs,

v.                                                    **ORDER**

Homeward Residential, Inc.,
Federal National Mortgage
Association,

                    Defendants.

> Jonathan L.R. Drewes, Esq. and Drewes Law, PLLC, 1516 West Lake Street, Suite 300, Minneapolis, MN 55408, counsel for plaintiffs.

> Jared D. Kemper, Esq., Andrew Peters, Esq. and Dykema Gossett, PLLC, 4000 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motion to dismiss by defendants Homeward Residential, Inc. (Homeward) and Federal National Mortgage Association (Fannie Mae) (collectively, defendants). Based on a review of the file, record and proceedings herein, and for the following reasons, the motion is granted.

## BACKGROUND

This mortgage dispute arises out of the foreclosure of property owned by plaintiff Koffi Toss, formerly known as Koffi Samaro. In January 2006, Toss executed a mortgage serviced by Homeward on property located at 934 Fuller Avenue in St. Paul,

Minnesota (Property).  Compl. ¶¶ 1, 5.  In July 2012, Toss defaulted on the mortgage and a sheriff's sale was scheduled for September 11, 2012.  Id. Ex. A, at 8.

On July 26, 2012, Homeward approved Toss for a four-month forbearance plan (Forbearance Plan), pursuant to which Toss would make reduced monthly payments of $400.  Id. Ex. B, at 1.  Homeward informed Toss that he could accept the Forbearance Plan offer in writing or by contacting Homeward by telephone.  Id.  Toss called the provided telephone number and made his first payment by telephone.  Compl. ¶ 13.  Thereafter, Toss made all payments required by the Forbearance Plan.  Id. ¶ 14.  The Forbearance Plan provided that Homeward would not "proceed to foreclosure sale during this Forbearance Plan, provided [Toss] compl[ied] with the terms of the Forbearance Plan."  Id. Ex. B, at 2.

On December 12, 2012, prior to the expiration of the Forbearance Plan, Homeward caused a sheriff's sale to be held. Compl. ¶ 17.  Homeward purchased the Property at the sale and assigned the Property to Fannie Mae.  Id. ¶¶ 4, 17.  Toss and another occupant of the Property, plaintiff Shannon Fouther (collectively, plaintiffs), allege that they did not receive notice prior to the foreclosure sale.  Id. ¶ 31-32.  Alternatively, plaintiffs allege that the "loss mitigation phone number" included with the notice was incorrect.  Compl. ¶¶ 36-37.

On July 12, 2013, plaintiffs filed this action in Minnesota court, alleging (1) breach of contract, (2) violations of Minnesota Statutes § 580.02, (3) violations of Minnesota Statutes §§ 580.03 and 580.041, (4) slander of title and (5) a quiet-title claim under Minnesota Statutes § 559.01. Defendants timely removed, and move to dismiss.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations and internal quotation marks omitted)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

## II.  Breach of Contract

Plaintiffs first allege that Homeward breached the Forbearance Plan by foreclosing on the Property before the Forbearance Plan expired.  Defendants respond that Minnesota Statutes § 513.33 precludes such a claim.  Section 513.33 provides that a "debtor may not maintain an action on a credit agreement[1] unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and debtor." Minn. Stat. § 513.33, subdiv. 2.  Specifically, defendants argue that the Forbearance Plan is unenforceable because it was not signed by Toss.

Plaintiffs respond that the Forbearance Plan offer explicitly allowed them to accept by telephone and that, by accepting the series of payments, defendants waived the right to contest the validity of the Forbearance Plan under § 513.33.  Plaintiffs, however, cite to no authority for the proposition that the signature requirement of § 513.33 can be waived, and Minnesota courts have been resistant to such arguments.  See Calhoun Beach Assocs. v. Citicorp Real Estate, Inc., No. C7-92-2060, 1993 WL 71498, at *2 (Minn. Ct. App. Mar. 16, 1993) (finding that allowing waiver of § 513.33 based on past dealings "would defeat the

---

[1] A credit agreement is "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Minn. Stat. § 513.33, subdiv. 1(1).  The parties do not dispute that the Forbearance Plan was a credit agreement.

statutory purpose of precluding litigation of hard-to-prove credit agreements"). As a result, dismissal of the breach of contract claim is warranted for this reason alone.

Even if § 513.33 did not bar the claim, however, plaintiffs cannot state a claim for breach of contract. "A successful breach-of-contract claim under Minnesota law has four elements: (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd., 703 F.3d 1104, 1107 (8th Cir. 2013) (citation and internal quotation marks omitted). Here, plaintiffs do not claim that they have suffered damage from any alleged breach of the Forbearance Plan.

Indeed, in the Forbearance Plan, Homeward explicitly retained the right to foreclose after December 2012 and stated that the Forbearance Plan "shall not constitute a cure of [Toss's] default under [the] loan." Compl. Ex. B, at 3. The sheriff's sale was held on December 12, 2012. Compl. ¶ 17. Plaintiffs do not allege, however, that they would have been able to cure the default and prevent foreclosure had the foreclosure been delayed until the end of December. As a result, plaintiffs have not adequately pleaded that they suffered damages from any alleged breach of contract. See Forseth v. Bank of Am., N.A., No. 13-38, 2013 WL 2297036, at *6 (D. Minn. May 24, 2013) ("There is no allegation that, for example,

5

had the sale been postponed by two weeks, [plaintiffs] would have been able to gather the funds to cure the default on the mortgage."). As a result, for this additional reason, dismissal of the breach of contract claim is warranted.

## III.  Minnesota Statutes § 580.02

Plaintiffs next allege a claim under Minnesota Statutes § 580.02.  Specifically, plaintiffs argue that Homeward foreclosed on the Property even though Toss was not in default.  Section 580.02 requires a party seeking to foreclose a mortgage to show "that some default in a condition of such mortgage has occurred, by which the power to sell has become operative."  Minn. Stat. § 580.02(1).  Plaintiffs argue that Toss was not in default at the time of the foreclosure because he had made all of the reduced payments required by the Forbearance Plan.

Defendants respond that, according to the express terms of the Forbearance Plan, Toss was in default throughout the forbearance period.  The court agrees.  Prior to the forbearance period, Toss was in default and owed $8417.50 on the loan.  Compl. Ex. A, at 8. The Forbearance Plan expressly stated that "[o]ther terms of your mortgage remain unchanged during this Forbearance Plan.  As a result of making reduced payments, you will become delinquent on your mortgage."  Id. Ex. B, at 1.  Moreover, as already explained, the Forbearance Plan stated that:

> [Homeward's] acceptance and posting of
> [Toss's] payment during the forbearance period

6

> will not be deemed a waiver of the
> acceleration of [Toss's] loan (or foreclosure
> actions) and related activities, and shall not
> constitute a cure of [Toss's] default under
> [Toss's] loan unless such payments are
> sufficient to completely cure [Toss's] entire
> default under [Toss's] loan.

Id. at 3. Toss alleges that he made six $400 payments - five of
which were ultimately retained by Homeward - but does not allege
that he cured the default. Compl. ¶ 14. As a result, Toss was in
default when defendants foreclosed, and dismissal of the § 580.03
claim is warranted.

**IV. Minnesota Statutes §§ 580.03 and 580.041**

Plaintiffs next allege claims under Minnesota Statutes
§§ 580.03 and 580.041. Specifically, plaintiffs argue that they
were not served with the statutorily-required (1) notice of sale,
(2) homestead designation notice, (3) "Help for Homeowners in
Foreclosure" notice, (4) "Foreclosure: Advice to Tenants" notice or
(5) notice of redemption rights. Compl. ¶ 32; see Minn. Stat.
§§ 580.03 (notice of sale); 580.041 (notice of redemption rights
and "Help for Homeowners in Foreclosure" notice); 580.042
(Foreclosure: Advice to Tenants notice); 582.041, subdiv. 2
(homestead designation notice). Plaintiffs also allege that
defendants failed to strictly comply with Minnesota Statutes
§ 580.041 because the loss mitigation phone number listed on the
"Help for Homeowners in Foreclosure" notice was non-operational.

### A.    Service

Defendants argue that plaintiffs cannot state a claim for violations of §§ 580.03 and 580.041 based on lack of service because there is conclusive evidence that Toss was served with the required documents.  Indeed, Brian Sowada, a process server, filed an affidavit attesting that he personally served "Koffi Mark Samaro aka Koffi Marc Samaro" with the documents at issue on August 8, 2012.  Compl. Ex. A, at 25.  The affidavit also remarks that the "premises were and have been occupied by ... Samaro and no one else."  Id.

"[A]n affidavit of service is usually strong evidence of proper service ... [which] may [only] be overcome by the production of clear and convincing evidence."  Peterson v. Eishen, 495 N.W.2d 223, 225-26 (Minn. Ct. App. 1993) (citation omitted).  Such evidence must be "practically conclusive."  Kueffner v. Gottfried, 191 N.W. 271, 272 (Minn. 1922) (citation omitted).  Plaintiffs attempt to rebut the presumption of validity by arguing that the affidavit of service is in Toss's former name[2] and does not note that Fouther was also living at the Property.  Such slight discrepancies in the affidavit of service, without more, however, are insufficient to overcome the presumption of service.  See Arzt v. Bank of Am., N.A., 883 F. Supp. 2d 792, 796-97 (D. Minn. 2012)

---

[2] Notably, the mortgage was in the name of Koffi Mark Samaro. See Compl. Ex. A, at 20.

(holding that the plaintiff's "self-serving affidavit and bare assertion that [plaintiff] did not receive service, combined with the change in [plaintiff's] surname, without more, does not create a genuine dispute sufficient to overcome [plaintiff's] burden to repudiate the sheriff's certificate." (citations omitted)).  As a result, the allegations relating to lack of service do not rise above the speculative level, and dismissal of the claims based on lack of service is warranted.

### B.   Loss Mitigation Phone Number

Defendants next argue that the allegations regarding the loss mitigation phone number fail to state a claim.  Under Minnesota Statutes § 580.041, lenders are required to include a "loss mitigation phone number" with the statutorily-required "Help for Homeowners in Foreclosure" notice.  Plaintiffs allege that

> [u]pon information and belief, this "loss mitigation phone number" is not and was not a loss mitigation phone number at any relevant time to this dispute, but rather is an invalid phone number that provides callers with the following message when called: "You have reached a number that is no longer in service. Please check the number and try again."

Compl. ¶ 37.  This bare assertion is insufficient to survive the motion to dismiss.

Here, plaintiffs do not allege that they unsuccessfully attempted to call the phone number, nor do they allege when or how many such attempts were made.  Additionally, plaintiffs do not attempt to reconcile their allegations about the incorrect phone

number with their factual allegations that they did not receive the "Help for Homeowners in Foreclosure" notice - the document containing the loss mitigation phone number.  Such bare and speculative allegations, without more, prevent the court from drawing "the reasonable inference that the defendant is liable for" providing an incorrect loss mitigation phone number at the time the notice was served on plaintiffs.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  As a result, plaintiffs have failed to state a claim based on the loss mitigation phone number, and dismissal is warranted.

**V.   Slander of Title**

Plaintiffs next allege a claim for slander of title.  To state a claim for slander of title, a plaintiff must allege facts that show:

> (1) That there was a false statement concerning the real property owned by the plaintiff; (2) That the false statement was published to others; (3) That the false statement was published maliciously; (4) That the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.

Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000) (citation omitted).  The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.  Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920).  Here, plaintiffs have alleged no facts from which

the court could infer that defendants made a false statement, that defendants acted with malice or that plaintiffs suffered any pecuniary damages from a publication concerning their title to the Property. See Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257-58 (8th Cir. 2013) (dismissing slander-of-title claim). As a result, plaintiffs fail to state a claim for slander of title, and dismissal is warranted.

## VI.  Quiet Title

Finally, plaintiffs allege a claim for quiet title. Under Minnesota law, a person in possession of real property may "bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively." Minn. Stat. § 559.01. To state a quiet-title claim, a plaintiff must state facts sufficient to allow the court to draw the reasonable inference that he or she is in possession of property and that a defendant claims a right or title to the property but has no such right or title. See Iqbal, 129 S. Ct. at 1949; Smola v. City of W. St. Paul, 47 N.W.2d 789, 789-90 (Minn. 1951). When, as here, a foreclosed property is sold at a sheriff's sale, "upon expiration of the time for redemption, the [sheriff's certificate of sale] shall operate as a conveyance to the purchaser or the purchaser's assignee of all the right, title, and interest of the mortgagor in and to the premises named

therein." Minn. Stat. § 580.12. Here, the redemption period has expired for the Property at issue and, as already explained, plaintiffs cannot plausibly claim that defendants have no right or title to the Property. As a result, plaintiffs cannot state a quiet-title claim, and dismissal is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 4] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 3, 2014

s/David S. Doty_____
David S. Doty, Judge
United States District Court